UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHIGBO PETER UMEH,

                                    Movant,

                -against-

UNITED STATES OF AMERICA,

                                    Respondent.

----------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: __  2/24/2016            │
└─────────────────────────────────────┘
```

14-CV-08473 (JSR)(SN)

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE JED S. RAKOFF:**

        Chigbo Peter Umeh moves under 28 U.S.C. § 2255 to vacate his 2011 conviction for

conspiring to import cocaine into the United States in violation of 21 U.S.C. § 959(a). Umeh was

captured by the DEA after joining an international conspiracy to import thousands of kilograms

of cocaine into the United States and elsewhere. His § 2255 motion argues: (1) the Government

withheld exculpatory recordings in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) his

trial counsel was ineffective for failing to negotiate a plea deal or to inform him of the

implications of a threatened sentencing enhancement; (3) his trial counsel was ineffective for

coercing him not to testify; and (4) section 959(a) runs afoul of the presumption against the

extraterritorial application of criminal laws announced in United States v. Vilar, 729 F.3d 62 (2d

Cir. 2013). He requests an evidentiary hearing to develop the factual basis for his arguments.

        Umeh's motion should be denied. His Brady claim is procedurally barred, and he has not

provided any basis, aside from his own speculation, for believing that the exculpatory recordings

exist. His trial counsel was under no obligation to pursue a plea deal; Umeh has not asserted that

he would have accepted any plea deal; and he has not shown prejudice from the asserted failure to inform him of the implications of the sentencing enhancement. Umeh's own submissions demonstrate that his counsel did not coerce him not to testify, and he has not established any prejudice that flowed from his decision not to do so. His statutory construction argument is procedurally barred and meritless. Finally, a factual hearing should not be granted because the existing record decisively shows that he is not entitled to relief.

## BACKGROUND

### I.    The Conspiracy and Prosecution

By his own admission, Umeh is a major international drug distributor with particular expertise in transporting drugs across borders. In 2009, Umeh sought to corrupt Liberian officials and gain their help in his drug distribution business. Umeh's primary contact was Fomba Sirleaf, the director of the Liberian National Security Agency and the son of Liberia's president. Unbeknownst to Umeh, Sirleaf was cooperating in a DEA sting operation to disrupt Umeh's drug business. Sirleaf brought a DEA confidential source known as "Nabil Hage" to lead negotiations with Umeh; Hage was joined by Sirleaf's deputy director Anthony Souh, who was cooperating with the DEA, and another confidential source known as "Santiago." Umeh met these men repeatedly during 2009 and 2010, and the DEA made extensive recordings of the meetings.

In February 2010, Hage introduced Umeh to Konstantin Yaroshenko, a Ukrainian pilot who had recently bought an airplane specially fitted for drug smuggling. Umeh agreed to pay Yaroshenko to fly thousands of kilograms of cocaine from Venezuela to Liberia and hundreds of kilograms from Liberia to Ghana. Umeh also engaged the services of Nathaniel French and Kudufia Mawuko, who would help him manage cocaine sea shipments from South America to

Africa. In May and June 2010, the DEA took custody of Umeh, Yaroshenko, French, and Mawuko, and they were tried together.

At trial, Umeh's counsel admitted that Umeh had participated in a cocaine conspiracy and that he had a long history as a cocaine trafficker. But counsel argued that the Government had not proven a jurisdictional element of their § 959(a) case, namely that Umeh believed that cocaine would be imported into the United States. According to counsel, Umeh opposed importing drugs to the United States because of a previous federal drug conviction that had taught him to fear U.S. drug enforcement. Counsel also suggested that in Umeh's experienced assessment drug prices were comparably low in the United States, and he had convinced his co-conspirators to limit their exports to Europe. Counsel made these arguments in his opening statement, summation, and through cross-examination of Government witnesses. Umeh did not take the stand, and his case consisted only of an admission of two prior drug trafficking convictions in the District of New Jersey.

According to Hage, however, Umeh believed that several hundred kilograms of cocaine were destined for the United States to repay Hage's associate there. He testified that the conspirators planned to ship cocaine from Liberia to Ghana and from there to transport the drugs on commercial flights to the United States in Liberian diplomatic pouches. The jury convicted Umeh and Yaroshenko on drug conspiracy charges but acquitted French and Mawuko.

At sentencing, Umeh addressed the Court for the first time and pleaded for clemency. He admitted that he was a drug trafficker, out of economic necessity, but strenuously denied any intent to import drugs into the United States. The applicable Guidelines range for Umeh's conviction was 360 months to life. The Court sentenced Umeh principally to 360 months' imprisonment.

## II.     Procedural History

### A.     Direct Appeal

On direct appeal, Umeh argued that the evidence was insufficient; the jury instructions were flawed; the Government had proven multiple conspiracies; there was no jurisdictional nexus to the United States in violation of due process; his arrest violated the Mansfield Amendment; and his indictment should have been dismissed following his improper extradition from Liberia and other Government misconduct. The Court of Appeals affirmed his conviction in a summary order. Umeh v. United States, 527 F. App'x 57 (2d Cir.), *cert denied*, 134 S. Ct. 464 (2013).

### B.     Yaroshenko's Rule 33 Motion

Following his direct appeal, Yaroshenko moved under Federal Rule of Criminal Procedure 33 to dismiss the indictment or for a new trial. As relevant here, he submitted an affidavit from Umeh asserting that the Government had withheld a recording of a May 2010 meeting in which Umeh told Santiago that he would not participate in a conspiracy to import drugs into the United States. The Court ordered the Government to file a declaration "confirming its initial representation to the Court that, to the best of its belief, no such recordings existed." United States v. Yaroshenko, 09-cr-524 (JSR), 2015 WL 3400805, at *4 (S.D.N.Y. May 21, 2015). The Government averred that while it "believed that no such recordings existed, it could not say that was the case with certainty because of difficulties communicating with Santiago, who had ended his role as a confidential source." Id. The Court allowed Yaroshenko to present additional evidence that the recordings existed, and he submitted an additional affidavit from Umeh. The Court then concluded that the evidence amounted to "nothing more than a litany of

unsupported accusations that additional undisclosed recordings exist," and denied the Rule 33 motion. Id.

### C.    Umeh's § 2255 Motion

Umeh's pro se § 2255 motion set forth six grounds of relief, arguing Brady violations, ineffective assistance of counsel, and asserting that the extraterritorial application of § 959(a) should be revisited in light of Vilar. Subsequently, Umeh retained counsel, and, following three motions for extensions, counsel filed a reply brief on September 30, 2015. The Government gained permission to file a surreply, and the § 2255 motion was fully briefed on November 23, 2015.

Umeh's counseled brief streamlined the arguments set forth in his original motion and abandoned two ineffective assistance grounds: that Umeh had been prejudiced by a conflict of interest and that his counsel had failed to raise the multiple conspiracies issue. He now argues that the Government violated Brady by withholding the May 2010 recording and a recording of an October 11, 2009 meeting with Souh and Sirleaf. The Government claims these recordings do not exist, but Umeh asserts that he recalls having the conversations and, based on what he has learned about the DEA's surveillance techniques, he is sure that they were recorded. He argues that trial counsel was ineffective for failing to negotiate a plea deal and for failing to inform him of the sentencing consequences of a 21 U.S.C. § 851 information. He also claims ineffective assistance because his counsel coerced him not to testify. Finally, he argues that Vilar requires the court to conclude that § 959(a) does not apply to extraterritorial conduct. He supported his motion with an unsigned declaration affirming the factual basis for his Brady and ineffective assistance claims. He seeks an order vacating his conviction, or, in the alternative, a factual hearing to develop his claims.

**DISCUSSION**

**I.      Timeliness**

A movant must seek relief under § 2255 within one year after the judgment of conviction becomes final. 28 U.S.C. § 2255(f). As relevant here, a judgment becomes final when the Supreme Court denies *certiorari*. See Williams v. Artuz, 273 F.3d 147, 151 (2d Cir. 2001). Under the prison mailbox rule, a pro se prisoner's submissions are deemed to have been filed on the date they were delivered to prison authorities. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001); Houston v. Lack, 487 U.S. 266, 270 (1988). And "in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' paper were given to prison officials on the date of their signing." Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) (collecting cases).

Umeh's motion was timely. His judgment became final on October 15, 2013, when the U.S. Supreme Court denied *certiorari*. His pro se § 2255 motion was dated October 13, 2014, less than a year later, and he affirmed in a written declaration that he gave the motion to prison officials on that date. The Government has not produced any evidence to undermine his claim. Thus, the Court should deem Umeh's motion filed on October 13, 2014, less than one year after his judgment became final, and consider his claims.

**II.     The Brady Claim**

    **A.      Procedural Bar**

A movant cannot challenge a conviction under § 2255 "on a ground that he failed to raise on direct appeal" unless he can show "(1) cause for the procedural default and ensuing prejudice or (2) actual innocence." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). If a movant failed to raise a Brady claim on direct appeal when the factual predicate for the claim was

already available, he will generally be barred from raising the claim in a § 2255 motion. See, e.g., Pizutti v. United States, 809 F. Supp. 2d 164, 178-80 (S.D.N.Y. 2011) (Movant "was aware that the prosecution interviewed these potential witnesses well before trial and that they had potentially exculpatory information, and he offers no new facts which would explain his failure to raise a claim on direct appeal . . . ."); Brown v. United States, 05-cr-857 (LBS), 2011 WL 3273202, at *8 (S.D.N.Y. Aug. 1, 2011) (Brady claim barred when movant did not "demonstrate that he lacked knowledge of or access to the allegedly new evidence at trial or on appeal.")

Umeh's Brady claim is procedurally barred. Umeh asserts that the Government withheld surveillance recordings of conversations from 2009 and 2010. Umeh believes that these recordings exist because the involved DEA informants claimed to have recorded every meeting with Umeh. These facts were available to Umeh at the time of his direct appeal. As a participant in the purported conversations, Umeh knew that they took place, and the identity of the DEA's informants and their recording techniques became clear during the trial. Umeh does not identify evidence that has emerged since his trial that would lead him to conclude that the Government withheld the purported recordings, and he has not shown cause for his failure to raise the issue on direct appeal. Accordingly, Umeh's Brady claim should not be considered on collateral review.

### B.    Merits Review

Even if Umeh's Brady claim were not procedurally barred, it would fail on the merits. There are three components to a Brady claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). "As a threshold matter, the defendant must show that the Government

actually suppressed evidence." United States v. Esposito, 834 F.2d 272, 275 (2d Cir. 1987).

Indeed, "mere speculation that exculpatory evidence was withheld is not sufficient under Brady,

and the Court cannot compel the production of evidence that is not known to exist." Mallet v.

Miller, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006). The Court has discretion to deny a Brady

claim without further factfinding when it lacks "any nonspeculative basis" for inferring that the

Government had not made available "all pertinent material in its possession." United States v.

Avellino, 136 F.3d 249, 261 (2d Cir. 1998).

     Umeh has not established that the Government suppressed any evidence. The

Government turned over hours of video and audio surveillance, much of which was ultimately

introduced at trial. In their response to Yaroshenko's Rule 33 motion, Government officials have

affirmed that they possess no undisclosed recordings. See Decl. of AUSA Randall Jackson,

S.D.N.Y. 09-cr-524 (JSR), ECF No. 136 at 3 ("I do not believe any recordings were made that

were not disclosed to the defense . . . ."); Decl. of DEA Agent James Eric Stouch, S.D.N.Y. 09-

cv-524 (JSR), ECF No. 136-1 at 2 ("I do not believe any undisclosed recordings were made by

'Santiago' or any other informant during the course of the investigation."). Umeh counters that

the material must exist because his interactions with DEA officials were all recorded. With

respect to the Santiago recordings, the Court has already concluded that such assertions were

"nothing more than a litany of unsupported accusations that additional undisclosed recordings

exist." Yaroshenko, 2015 WL 3400805, at *4. This conclusion also holds true for the Sirleaf

recordings. Umeh has not provided any basis other than his own speculation to believe that the

recordings exist, and, thus, he has not met his burden.

### III.    Ineffective Assistance Ground One: Failure to Seek a Plea Deal

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance fell outside "the wide range of reasonable professional assistance" and that there is a "reasonable probability" that, but for counsel's errors, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 689, 694 (1984). Reasonable assistance requires defense counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). "If no plea offer is made," then the issue of ineffective assistance "simply does not arise." Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012). To establish ineffective assistance in the context of plea negotiations, "a defendant must show that the outcome of the plea process would have been different with competent advice." Id. at 1384. But competent advice does not necessarily require counsel to pursue plea negotiations: the question of whether to pursue a plea agreement "is a strategic decision ordinarily not second-guessed by the court." United States v. Morel, 07-cr-4899 (DC), 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010). Ineffective assistance of counsel is properly raised for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 505-06 (2003).

According to Umeh, his counsel indicated that "if I hired him, he was being hired to take the case to trial; he told me that if I wanted to plead guilty he would refer me to someone else . . . ." ECF No. 22 at 6-7. As promised, trial counsel did not pursue a plea deal with the Government. According to Umeh, counsel thought that Umeh's defense was strong, that the Government would not prove that he intended to send drugs to the United States and that "we were going to win." Id. at 7. But, crucially, Umeh does not claim that the Government offered him a plea deal that his counsel did not convey to him. And Umeh does not claim that, if offered a deal, he

would have taken it rather than go to trial. In fact, his affirmation asserts the opposite: "From the day I met Mr. Fisher, I was adamant that I wanted to testify at trial" to convince a jury "that I believed that no drugs were to be sent to the United States." Id. at 8. Umeh has not shown that the Government would have offered any plea deal if his counsel had pursued one, and he has not shown that he would have accepted any deal that was offered. Thus, the Court should conclude that this ineffective assistance ground lacks merit.

Umeh also claims that his counsel was ineffective for failing to inform him of the impact of the Government's threat to file a notice of prior convictions under 21 U.S.C. § 851 if he refused to plead guilty. He admits that counsel conveyed the threat; he claims only that he did not understand its ramifications under the Sentencing Guidelines. But he has not established that this purported error caused him any prejudice. First, he has not affirmed that he would have pleaded guilty if he had understood the sentencing import of the § 851 information. Second, he has not established that his sentence would have been different if the Government had not filed the information. The § 851 information doubled Umeh's mandatory minimum sentencing exposure from 10 years to 20 years' imprisonment. See 21 U.S.C. §§ 960(b)(1), 962. But Umeh can only speculate that his sentence would actually have been lower without that enhancement. The Court sentenced Umeh to 360 months, which was at the bottom of the Sentencing Guidelines range but well above the mandatory minimum.

## IV.    Ineffective Assistance Ground Two: Coercing Umeh Not to Testify

Criminal defendants have a constitutional right to testify, and "the decision whether to testify belongs to the defendant and may not be made for him by counsel." Brown v. Artuz, 124 F.3d 73, 78 (2d Cir. 1997). Accordingly, "counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the

defendant's decision on this matter." Id. at 79. Any claim "that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two prong test established in Strickland . . . ." Id. Thus, a defendant must show that, had he testified, there is "a reasonable probability" that a defendant's "proposed testimony would have altered the outcome of the trial." Rega v. United States, 263 F.3d 18, 21 (2d Cir. 2001).

Umeh has not established that his counsel breached his professional duty of informing him of his right to testify. In a letter Umeh cites in his reply brief, his counsel stated that "notwithstanding my advice," the choice whether to testify "is yours and only yours to make." ECF No. 19-1 at 12. Having made that clear, counsel urged Umeh not to testify and explained why testifying would be a bad idea:

> I urge you in the strongest possible terms not to testify. It is one thing for me to tell the jury about the enormity of your involvement with drugs throughout your life; it is another that the jury has seen and heard an enormous amount of evidence that I told them in the opening in this regard. But you on the witness stand, having to answer a virtually limitless number of questions about your dealings in drugs would have an enormously greater impact than what it is and would be if you chose not to testify.

Id. Counsel's letter plainly informed Umeh that he had the absolute right to testify, but it also gave good reasons to waive that right—reasons that support counsel's strategic decision to advise Umeh not to take the stand. Ultimately, as Umeh argues, this might have been bad advice. In the absence of Umeh's testimony, there was no direct trial evidence that he lacked knowledge or intent to import drugs into the United States. But a court should "not second-guess trial counsel's strategy simply because the chosen strategy has failed." United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987). Counsel's strategy may have been a losing one, but it was not constitutionally inadequate.

Umeh also argues that counsel's advice caused him to feel "completely trapped and coerced," ECF No. 22 at 10, and that counsel's failure to prepare him to testify prevented him from doing so. But counsel "may strongly advise the course that counsel thinks best" as long as he also informs the defendant "that the ultimate decision to whether to take the stand belongs to the defendant." Brown, 124 F.3d at 79. Counsel's strong advice came with the caveat that Umeh could always testify. Nonetheless, Umeh "felt powerless to fight this and gave in." ECF No. 22 at 10. His admission demonstrates only that he accepted counsel's advice—not that counsel improperly prevented him from testifying. And, having accepted his counsel's advice not to testify, he relieved counsel of any professional obligation to prepare his testimony.

But even assuming that counsel's performance was deficient in some respect, Umeh has failed to show prejudice. Throughout his opening statement, cross-examination, and summation, Umeh's counsel told the jury that Umeh wanted to have nothing to do with sending drugs to the United States. The jury convicted Umeh anyway, and Umeh does not explain how his own testimony would have swayed them. In fact, the jury might well have been more firmly convinced of his guilt after hearing him discuss his history in the drug trade.

## V.    The Claim that Vilar Requires the Court to Revisit the Extraterritorial Effect of § 959(a)

### A.    Procedural Bar

Umeh argues that Vilar requires the Court to revisit the extraterritorial effect of § 959(a). He could have raised this argument in his direct appeal, but did not. Thus, he is procedurally barred from raising it in a § 2255 motion.

Default can be excused when a claim is "so novel that its legal basis is not reasonably available to counsel" on direct review. Reed v. Ross, 468 U.S. 1, 16 (1984). But the "futility test to excuse a default is strict: the question is not whether subsequent legal developments have

made counsel's task easier, but whether at the time of the default the claim was 'available' at all." United States v. Thorn, 659 F.3d 227, 233 (2d Cir. 2011) (internal quotation marks omitted).

A challenge to § 959(a) based on the presumption against extraterritoriality was not a novel claim at the time of Umeh's direct appeal. Nor did Vilar state a new principle of law that made a new legal argument available to defense counsel. In fact, Vilar relied extensively on a 1922 Supreme Court case that grappled with the presumption against extraterritoriality in the context of criminal statutes. See Vilar, 729 F.3d at 72-74 (discussing United States v. Bowman, 260 U.S. 94 (1922)). As the Vilar court observed, the presumption has a long history, and courts routinely consider it when interpreting criminal statutes. See, e.g., United States v. Gatlin, 216 F.3d 207, 211 n.5 (2d Cir. 2000) (Notwithstanding the presumption, statutes "prohibiting crimes against the United States government may be applied extraterritorially even in the absence of 'clear evidence' that Congress so intended."); United States v. Kim, 246 F.3d 186, 188-89 (2d Cir. 2001) (Although "there is no general bar against the extraterritorial application of our criminal laws to American citizens, the Supreme Court has long recognized a presumption against such applications."); Small v. United States, 544 U.S. 285, 389 (2005) (applying the presumption against extraterritoriality to determine whether the phrase "convicted in any court" includes foreign courts). Vilar noted that a few cases stated a broad view of the extraterritorial impact of the criminal laws. See, e.g., United States v. Siddiqui, 699 F.3d 690, 700 (2d Cir. 2012) ("The ordinary presumption that laws do not apply extraterritorially has no application to criminal statutes."); United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011) ("The presumption that ordinary acts of Congress do not apply extraterritorially . . . does not apply to criminal statutes."). But Vilar concluded that those statements "must be understood in their context," not to mean that the presumption did not apply, but rather that a criminal statute could

13

be presumed to have an extraterritorial effect when it relates to crimes against the United States government. Vilar, 729 F.3d at 73. In short, the presumption against extraterritoriality is a basic principle of statutory interpretation that was at the defendant's disposal at the time of his direct appeal. He has not shown any cause for failing to raise it then.

### B.    Merits Review

In any event, Vilar does not help Umeh. Vilar considered only whether criminal liability under Section 10(b) of the Securities Exchange Act of 1934 extends to extraterritorial securities transactions. This question was live because the Supreme Court had recently decided that the civil provisions of the Act applied only to domestic securities transactions. See Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247 (2010). In Morrison, the Supreme Court ruled that Section 10(b) did not have a clear statement of extraterritorial effect, but, rather, the opposite: a statement limiting its application to securities bought or sold in the United States or on U.S. exchanges. Id. at 255-68. The Vilar court concluded that Morrison's analysis should apply to criminal liability under Section 10(b) because criminal jurisdiction is authorized by the same statutory language.

Vilar's analysis does not hold for § 959(a). Unlike Section 10(b), which has a statement limiting its effect to domestic activity, § 959(a) is "intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." 21 U.S.C. § 959(c). Simply put, § 959 has a clear statement of extraterritorial effect, and the presumption against extraterritoriality has no application to this case.

### CONCLUSION

Because Umeh's claims do not warrant habeas relief, I recommend DENYING his § 2255 motion. Further, Umeh is not entitled to an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.

§ 2255(b). Finally, Umeh has not made a substantial showing of the denial of a constitutional right, and I recommend that the Court decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         February 24, 2016

\*               \*               \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rakoff. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).